NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**10TALES, INC.,**
*Plaintiff-Appellant*

**v.**

**TIKTOK INC., TIKTOK PTE. LTD., BYTEDANCE LTD., BYTEDANCE INC.,**
*Defendants-Appellees*

---

2024-1792

---

Appeal from the United States District Court for the Northern District of California in No. 5:21-cv-03868-VKD, Judge Virginia Kay DeMarchi.

---

Decided:  March 31, 2026

---

THOMAS FISHER, Cozen O'Connor, Washington, DC, argued for plaintiff-appellant.  Also represented by BARRY P. GOLOB.

STEPHEN S. KORNICZKY, Sheppard Mullin Richter & Hampton LLP, San Diego, CA, argued for defendants-appellees.  Also represented by MICHAEL JAMES HOPKINS, JAMES YOUNG HURT, ERICKA SCHULZ; TODD E. LUNDELL, Costa Mesa, CA; BLAINE H. EVANSON, JAMES REX LEE,

Gibson, Dunn & Crutcher LLP, Irvine, CA; ALEXANDER N. HARRIS, Los Angeles, CA.

———————————

Before DYK, PROST, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

10Tales, Inc. appeals the United States District Court for the Northern District of California's grant of TikTok Inc.'s motion for judgment on the pleadings of invalidity under 35 U.S.C. § 101. We affirm.

BACKGROUND

10Tales, Inc. ("10Tales") owns U.S. Patent No. 8,856,030 (the "'030 patent"), entitled "Method, System and Software for Associating Attributes Within Digital Media Presentations." J.A. 23. The '030 patent issued in 2014 and claims priority to a provisional application filed on April 7, 2003, a period before the launch of social networking platforms like Twitter and Facebook. *Id.*

The '030 patent concerns a system for customizing or personalizing content based on user social network information. *See* J.A. 50, 2:65–3:7. As the specification notes, the patent sought to "attract individuals to content that is personally more relevant and impactful for them . . . as opposed to [the user] skipping over all or a portion of the message." J.A. 50, 2:3–7. Claim 1 of the '030 patent, the only claim at issue, recites:

> 1. A system for associating user attributes with digital media asset attributes and creating a user specific composite digital media display, the system comprising:
>
> a) a server;
>
> b) a computer-readable storage medium operably connected;

10TALES, INC. v. TIKTOK INC.                                    3

c) wherein the computer-readable storage medium contains one or more programming instructions for performing a method of associating user attributes with digital media asset attributes and creating a user specific composite digital media display, the method comprising:

identifying a first set of digital media assets stored on the computer-readable storage medium,

creating, from the first set of digital media assets, a first composite digital media display,

presenting to the user via a display server, the first composite digital media display;

retrieving user social network information from at least one source external to the presented first composite digital media display, wherein the user social network information contains one or more user attributes;

selecting, based on the user attributes in the social network information, a second set of digital media assets, wherein the second set of digital media assets is associated with one or more user attributes found in the user social network information;

monitoring the first composite digital media display for the presence of a trigger, wherein the trigger indicates a personalization opportunity in the first set of digital media assets;

performing a rule based substitution of one or more of the digital media assets from the first set of digital media assets with one or more of the digital media assets from the second set of digital media assets to create a user specific set of digital media assets;

creating, from the user specific digital media assets, a user specific composite digital display; and

> presenting to the user via the display server, the
> second composite digital media display.

J.A. 59–60, 20:62–22:15.

10Tales sued TikTok, Inc., TikTok Pte. Ltd., ByteDance Ltd., and ByteDance, Inc. (collectively "TikTok"), in the United States District Court for the Western District of Texas, alleging infringement of claim 1 of the '030 patent. The case was then transferred to the United States District Court for the Northern District of California.

TikTok filed a Rule 12(b)(6) motion to dismiss 10Tales's complaint on the ground that claim 1 was directed to patent ineligible subject matter. J.A. 3. The district court denied the motion without prejudice, noting that claim construction was required to properly determine whether claim 1 claimed ineligible subject matter under 35 U.S.C. § 101. *Id.*

Following the district court's claim construction order, J.A. 2907–2931, TikTok moved pursuant to Rule 12(c) for judgment on the pleadings, arguing that the asserted claim was invalid under 35 U.S.C. § 101. The district court granted TikTok's motion. At step one of the eligibility inquiry, the district court rejected TikTok's arguments that claim 1 was directed to the abstract idea of targeted advertising, noting that the claim is "more generally directed to a system for presenting personalized digital media content to a user based on the user attributes from user social network information." J.A. 7. Nevertheless, the district court concluded that "claim 1 *is* limited to an abstract idea: presenting personalized content to a user based on information about the user." *Id.* The district court explained that the patent is not directed to any improvement in computer technology or network functionality, but "instead claims a long-standing and fundamental practice of personalizing content based on user attributes that spans many domains." *Id.*

At step two, the district court determined that each of the elements of claim 1 recites conventional steps and computer components, in general functional terms, that are insufficient to transform the abstract idea under claim 1 into patent eligible subject matter.  J.A. 18.  The district court also determined that there was nothing inventive about the ordered combination of those elements.  J.A. 19.  Thus, the district court concluded that claim 1 was ineligible under 35 U.S.C. § 101.  The district court also denied 10Tales's motion for leave to amend its complaint in the event the district court determined that the '030 patent was ineligible under 35 U.S.C. § 101.

10Tales timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

This court reviews a district court's judgment on the pleadings under regional circuit law, here the Ninth Circuit. *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1367 (Fed. Cir. 2017).  The Ninth Circuit reviews de novo an order granting a Rule 12(c) motion for judgment on the pleadings. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  The court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Id.* Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *Id.*

Patent eligibility under § 101 is ultimately a question of law that may involve underlying factual findings. *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1378 (Fed. Cir. 2024).  To determine whether patent claims are directed to patent ineligible subject matter, the Supreme Court has developed a two-step test commonly known as the "*Alice*" test. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014).  Under *Alice* step one, we consider whether the claims at issue are directed to, in this case, an abstract

idea. *Id.* If the claims are not directed to an abstract idea, the *Alice* inquiry ends. *Id.* If we conclude that the claims are directed to an abstract idea, the inquiry continues to *Alice* step two, where we ask whether the claims recite "significantly more" than the abstract idea itself. *Id.* Specifically, the court must determine "whether the claim elements, individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using well-understood, routine, and conventional activities previously known to the industry." *Chewy, Inc. v. Int'l Bus. Machs. Corp.*, 94 F.4th 1354, 1365 (Fed. Cir. 2024) (citation modified).

## A.

10Tales argues claim 1 is directed to the non-abstract idea of a system for "modifying a stream of content provided to a user based on social network information about the user that has been retrieved by the system from an external source." Appellant Br. 38. But even accepting that idea, claim 1's system is directed to an abstract idea. As "reflected repeatedly in our cases," claims can be "abstract" under step one when they lack the "specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167–68 (Fed. Cir. 2018) (collecting cases). The claim itself "must identify 'how' that functional result is achieved by limiting the claim scope to structures specified at some level of concreteness, in the case of a product claim, or to concrete action, in the case of a method claim." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020).

Claim 1 recites that the system performs the following functions by executing "one or more programming instructions": (1) presenting an initial set of digital media assets to a user, (2) retrieving user social network information and attributes, (3) selecting a second set of assets based on such information and attributes, and (4) substituting one

or more of the initial set of assets for the second set once some kind of "personalization opportunity" arises. J.A. 59–60, 20:62–22:15. There is nothing in claim 1 directed to *how* to implement these steps for modifying digital media content based on a user's social network information. Claim 1 is instead written to claim "only a result" as opposed to a "way of achieving it." *See SAP Am.*, 898 F.3d at 1167–68. Accordingly, the claim is drawn to the underlying idea itself, i.e., presenting personalized content to a user based on information about the user. Personalizing, or customizing, information based on information from the user is an abstract idea. *Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (noting that "customizing information based on . . . information known about the user" is an abstract idea); *see also Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016). For the reasons discussed above, claim 1 is directed to an abstract idea.

B.

Because claim 1 is directed to an abstract idea, we proceed to step two of *Alice.* At step two, "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (quoting *Alice*, 573 U.S. at 215, 218). Here, neither the claim's components nor its functions do anything more than implement the abstract idea of presenting personalized content to a user based on information about the user. *See* J.A. 59, 20:65–67 (reciting only generic components, such as a "server" and a "computer-readable storage medium"). We conclude that there is nothing in the claim sufficient to transform it into eligible subject matter.

10Tales argues that the "retrieving user social network information from at least one source external to the

presented first composite digital media display" limitation is an inventive concept. 10Tales largely focuses on the novelty of the claim, noting that the '030 patent survived several validity challenges because of the inclusion of this limitation. *See* Appellant Br. 42–59. Specifically, 10Tales notes that this limitation distinguished it over prior art systems, which had not envisioned resort to user social network information to improve digital media content. Appellant Br. 43. But the law is clear. "[A] claim for a *new* abstract idea is still an abstract idea. The search for a § 101 inventive concept is thus distinct from demonstrating § 102 novelty." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016). Thus, while the inventor of the '030 patent may have had the foresight of retrieving user information from social networks as a means for personalizing digital media content, that idea, without more specificity reflected in the claim, is still an abstract idea, and thus, cannot provide the inventive concept at step two.

10Tales also argues that the claim's limitation concerning a "rule based substitution of one or more of the digital media assets" also makes the specific combination of limitations inventive. Appellant Br. 50. 10Tales's argument is unpersuasive. At claim construction, which followed the district court's denial of TikTok's initial Rule 12(b)(6) motion, 10Tales did not argue for a specific construction of the "rule based" limitation. J.A. 2930–31. As a result, the district court instead observed that "rule based" simply refers to "a substitution that happens by application *of a rule*, rather than on the basis of some discretionary or subjective determination." *Id.* (emphasis added). Thus, this nonspecific "rule based" limitation, which does not limit the claimed invention to a particular type of modification or substitution, does not provide an inventive concept at step two. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017).

10TALES, INC. v. TIKTOK INC.                    9

CONCLUSION

We have considered 10Tales's remaining arguments and find them unpersuasive. For the reasons provided, we affirm.

**AFFIRMED**